UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARMANDO A. SAMMARTINO and THERESE  :
SAMMARTINO, his wife        :
              :
    Plaintiffs,       :
              :
v.              :   Civil Action No. 08 0967 RJL
              :
              :
AC&R INSULATION CO., INC., et al.,   :
              :
    Defendants.      :
_____ :

## PLAINTIFFS' MOTION TO REMAND

Armando A. Sammartino and Therese Sammartino ("Plaintiffs"), by and through

undersigned counsel, pursuant to 28 U.S.C. §§ 1441 (c) and 1447 (c), hereby move this Court to

Remand this entire matter to the Superior Court for the District of Columbia or, in the

alternative, to sever the case such that the undisputed state law portion of the case be remanded

to the Superior Court for the District of Columbia, and further request an oral hearing pursuant to

LCvR 78.1, and as grounds therefore, state the following:

1.  On May 1, 2008, Plaintiffs filed their asbestos product liability claim against

various defendants alleging that Mr. Sammartino's mesothelioma was caused by his exposure, as

a career plumber/steam-fitter, to asbestos products manufactured, distributed and/or installed by

the defendant corporations.

2.  On June 5, 2008, Defendant Krafft-Murphy company filed a Notice of Removal

asserting that because some of Mr. Sammartino's alleged exposure to asbestos-containing

materials potentially occurred on "federal enclaves," a federal question was raised under 28

U.S.C. § 1331 and a cause of action lies in this Court pursuant to 16 U.S.C. § 457. The "federal enclave" doctrine is the sole basis articulated for removal.

3.     No other defendant signed the Notice of Removal, nor did any other defendant file its own Notice of Removal. More importantly, no other defendant filed a single document with this Court unambiguously and independently concurring with the removal. This fact alone violates the technical requirements of unanimity (i.e., "the Three Musketeers Rule") and renders the removal defective, mandating remand of the case to the Superior Court. *Williams v. Howard University*, 984 F.Supp. 27, 30 (D.D.C. 1997).

4.     Krafft-Murphy's attachment to its Notice of Removal of "consent letters" from the non-removing defendants to counsel for Krafft-Murphy does not satisfy the requirements of 28 U.S.C. 1446 (a), Rule 11 of the Federal Rules of Civil Procedure, or Local Civil Rules 5.1 and 11.1, nor a line of cases holding that communications between counsel do not satisfy the unanimity rule. *See, e.g., Creekmore v. Food Lion, Inc.*, 797 F.Supp. 505, 509 (E.D.Va. 1992) (Section 1446, in conjunction with Rule 11, "requires all defendants, individually, or through their counsel, to voice their consent before the court, not through another party's attorney."); *Codapro Corp. v. Wilson*, 997 F.Supp. 322, 326 (E.D.N.Y. 1998) (letters from co-defendants to removing defendant attached as exhibits in support of removal did not constitute valid written consent).

5.     Aside from the procedural defects mandating remand, Krafft-Murphy, as the removing party, has not satisfied its burden of establishing that jurisdiction properly exists in this Court. *See Breakman v. AOL,* LLC, 545 F.Supp.2d 96 (D.D.C. 2008) (party seeking removal bears burden of proving jurisdiction). Namely, Krafft-Murphy has not (a) adequately demonstrated that Mr. Sammartino's injuries arose from incidents occurring in federal enclaves,

or (b) shown that resolution of the complaint will necessarily raise substantial questions of federal law.

      6.      However, due to the defects in the Notice of Removal, this Court need not even address any jurisdictional issues, because where "it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand." *Luellen v. Luellen*, 2006 WL 1825220 (D.D.C. June 29, 2006) (Leon, J) *citing* 28 U.S.C. § 1446 (c)(4).

      7.      Even if the Court decides that Krafft-Murphy has satisfied its procedural obligations, and met its burden of establishing substantive grounds for removal under the federal enclave doctrine, the majority of the case - involving uncontroverted state law claims - may be severed and remanded to the Superior Court.

      **WHEREFORE**, Plaintiffs Armando and Therese Sammartino respectfully request that the Court GRANT their Motion to Remand and remand this case to the Superior Court for the District of Columbia or, in the alternative, that the Court sever that part of the case that involves only state law claims and remand it to the Superior Court for the District of Columbia.

Respectfully submitted,

*/s/ Daniel A. Brown*
Daniel A. Brown
DC Bar No. 444772
BROWN & GOULD, LLP
7700 Old Georgetown Road, Suite 500
Bethesda, Maryland 20814
Tel: (301) 718-4548
Fax: (301) 718-8037
dbrown@brownandgould.com
Attorney for Plaintiffs

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2008, a true and correct copy of the foregoing Motion to Remand was served electronically via the Court's CM/ECF system (or, to the extent such service could not be accomplished because the recipients have not yet registered for e-service, via first class U.S. mail, postage prepaid) to all counsel of record.

*/s/ Daniel A. Brown*
Daniel A. Brown

## LCvR 7 (m) STATEMENT

Counsel for Plaintiffs sought, but did not obtain, the consent of each of the Defendants herein, each of whom opposes the motion.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARMANDO A. SAMMARTINO and THERESE    :
SAMMARTINO, his wife                  :
1604 Dennis Avenue                    :
Silver Spring, MD 20902               :
                                      :
            Plaintiffs,               :
                                      :
v.                                    :    Civil Action No. 08 0967 RJL
                                      :
                                      :
AC&R INSULATION CO., INC., et al.,    :
                                      :
            Defendants.               :
                                      :

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

Plaintiffs, by and through undersigned counsel, submit this memorandum of law in

support of their motion to remand this case to the Superior Court for the District of Columbia

and state as follows.

## INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff, Armando Sammartino, worked as a plumber from approximately 1948 through

1986, at jobsites primarily in and around the District of Columbia where he was exposed to

asbestos products. Complaint at p.3. As a result of his exposure to asbestos-containing materials

manufactured, distributed, supplied and/or installed by the defendants, Mr. Sammartino is dying

of mesothelioma. *Id.* Mesothelioma is a rare, fatal cancer of the lining of the lung or abdominal

cavity for which asbestos exposure is the only known cause. *See, e.g., Norfolk & Western Ry. v.*

*Ayers*, 538 U.S. 135, 142 (2003). The disease kills its victims "generally within two years of

diagnosis[,]" during which time "[m]esothelioma victims invariably suffer great pain and

disability." *Georgine v. Amchem Products*, 83 F.3d 610, 633 (3d Cir.), aff'd, 521 U.S. 591 (1997).

This lawsuit was filed on May 1, 2008 in the Superior Court for the District of Columbia, asserting common-law product liability claims cognizable under D.C. law. The Complaint alleged no federal claims. The case proceeded with an expedited deposition of Mr. Sammartino given his exigent health condition.[1] On June 5, 2008, Defendant Krafft-Murphy filed its Notice of Removal to this Court alleging federal enclave jurisdiction as the basis of its petition. Yet, Krafft-Murphy has no interest in seeing this case proceed in this Court under federal enclave jurisdiction or any other theory for that matter. Moreover, if Plaintiffs believed the case would proceed in this Court they would not have filed the instant motion to remand. On June 12, 2008 Krafft-Murphy filed a Notice of Tag-Along Action, identifying this case as one that may be subject to transfer to the Asbestos MDL Court. Krafft-Murphy fully expects this case to be transferred to federal court in Philadelphia – where it will likely languish and die long after Mr. Sammartino has left this earth.

On July 29, 1991 the Judicial Panel on Multidistrict Litigation established the MDL for asbestos cases. At the time of its formation, the concept was to promote the just and efficient processing of the tens of thousands of asbestos cases then pending in federal courts across the country. *See, generally, In re Asbestos Products Liability Litigation (No. VI)*, 771 F.Supp. 415 (J.P.M.L. 1991). Today, despite significant efforts to efficiently process these claims, and despite newly minted efforts to resolve cases, tens of thousands of asbestos claims remain under the stewardship of a solitary judge (Giles, J.) in Philadelphia. *See, e.g., Statistical Analysis of*

---

[1] Mr. Sammartino was deposed on May 7, May 23 and May 30, 2008. The depositions were staggered to accommodate his weakened condition.

*Multidistrict Litigation 2007* (J.P.M.L. 2007); *In re Asbestos Products Liability Litigation (No. VI)*, 2007 WL 2372400 (E.D. Pa. 2007).

Thus, it is common for asbestos defendants to try and remove state-filed asbestos claims to federal court which automatically obstructs the timely prosecution of any given case. As described by then-Chief Judge Hornby of the United States District Court for the District of Maine:

> If these claims return to state court they will proceed to resolution. If they remain in federal court they will encounter significant delay upon their transfer through the panel on multidistrict litigation to the Eastern District of Pennsylvania where no asbestos trials or discovery takes place in deference to global settlement efforts. This delay is of economic benefit to the defendants and imposes costs on the plaintiffs.

*In re Maine Asbestos Cases*, 44 F.Supp.2d 368, 374 n.2 (D.Me. 1999).

As further observed by Chief Judge Mills of the United States District Court for the Northern District of Mississippi:

> The court is also aware that asbestos removal litigation, as it has developed in this state, generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time. While the desire of the defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals.

*Rosamond v. Garlock Sealing Technologies*, 2004 WL 943924 (N.D. Miss., April 5, 2004).

Given Mr. Sammartino's prognosis, and given the inherent delay associated with removal in these asbestos cases, the chances of him living to see his day in court have already diminished greatly. Accordingly, Plaintiffs respectfully request that this Court expedite consideration of this motion to remand.

3

**ARGUMENT**

### 1. Legal Standard

This Court recently articulated the legal standard of review in analyzing a motion to remand in *Ctr. For Science in the Public Interest v. Burger King Corp.*, 534 F.Supp.2d 141, 143 (D.D.C. 2008) (Leon, J.). Of import here are three crucial factors: (a) the removing party bears the burden of proving that jurisdiction exists in federal court, (b) the scope of this Court's removal jurisdiction is narrowly construed, and (c) where jurisdiction is doubtful, a remand to the Superior Court is necessary. *Id.* Moreover, this Court must "resolve any ambiguities concerning the propriety of removal in favor of remand." *Id.* (citing *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 66 (D.D.C. 2002)).

### 2. Failed Unanimity

#### a. Letters to a Co-Defendant do not Satisfy the Rule on Unanimous Consent

Against this backdrop, and before wrestling with any jurisdictional matters, the first issue to be analyzed by the Court is whether there exists any defect in the procedural posture of Krafft-Murphy's Notice of Removal. *See Luellen v. Luellen*, 2006 WL 1825220 (D.D.C. June 29, 2006) (Leon, J.). A procedural defect does exist and remand is warranted.

When removing an action to federal court under 28 U.S.C. § 1441(a) and 1446(a), each defendant must unambiguously and independently consent to removal. *Williams v. Howard University*, 984 F.Supp. 27, 30 (D.D.C. 1997) (Green, J.).[2] While each defendant (or its counsel) need not sign the petition of removal, "the non signing defendant must voice such consent directly to the Court by filing a separate pleading which expresses consent to join in." *Stonewall*

---

[2] None of the three recognized exceptions to the unanimity rule attaches here. The exceptions are: (1) where one or more of the defendants were not yet served with the initial pleading at the time the removal petition was filed; (2) where a defendant is merely a nominal or formal party-defendant; and (3) where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c). *Id.* at n.5.

*Jackson Memorial Hospital v. American United Life Insurance*, 963 F.Supp. 553, 558

(N.D.W.Va. 1997) (citing *Martin Oil v. Philadelphia Life Ins.*, 827 F.Supp. 1236, 1239

(N.D.W.Va. 1993)) (emphasis supplied). Moreover, "mere filing of a pleading or motion in

federal court is insufficient to demonstrate unambiguous consent to removal." *Williams*, 984

F.Supp at 30 n.4. What is required is a separately filed document that clearly and formally

voices consent. *Id.* (citing *Ford v. New United Motors Mfg., Inc.*, 857 F.Supp. 707, 708 n.3

(N.D.Cal. 1994)).

> The formalistic requirement that the non-signing (*i.e.*, non removing) defendants file their

independent consent directly with the Court is consistent with the tenets of Rule 11 of the

Federal Rules of Civil Procedure, as well as Local Civil Rules 5.1 and 11.1. In analyzing the

precise issue before this Court, the U.S. District Court for the Eastern District of Virginia held:

> Rule 11 does not authorize one party to make representations or file pleadings on behalf
> of another. Rather, Rule 11 requires that each pleading, motion, or other paper submitted
> to the court be signed by the party or its attorney of record, if represented. Both
> [allegedly consenting defendants] are represented by counsel and clearly are "movants"
> subject to the requirements of Rule 11. They must file their own signed pleadings.

*Creekmore v. Food Lion, Inc.*, 797 F.Supp 505, 508 (E.D.Va. 1992). In *Creekmore*, Food Lion

(the removing party) argued that its representations to the court that the other defendants

consented to removal satisfied section 1446. The court rejected that argument and held that

"[t]he statute requires all defendants, individually, or through their counsel, to voice their consent

before the court, not through another party's attorney." *Id.* at 509.

> Similarly, in *Codapro Corp. v. Wilson*, 997 F.Supp. 322 (E.D.N.Y 1998), the court

examined the unanimity requirement and held that the removing party failed to satisfy his burden

of showing that all defendants consented to the removal. As in this case, the removing party in

*Codapro* submitted letters to the court from other defendants purportedly consenting to the

5

removal. After noting that all of the "consent" letters had identical contents and appeared to

have been drafted by the same individual, the court was "not convinced that the letters from the

various individual defendants annexed as supporting exhibits to [the removing party's] affidavit

constitute a valid written consent to removal." *Id.* at 326. Accordingly, the court remanded the

case. *Id.* at 327; *see also Edelman v. Page*, 535 F.Supp.2d 290, 295 (D.Conn. 2008) (although

court did not doubt that attorneys for different defendants did, in fact, agree to remove the case,

"consenting" emails communicated among defense counsel were insufficient to support removal;

each defendant had to timely file its consent directly with the court).

While these hyper-technical requirements may at first blush appear picayune, they must

be weighed against the serious federalism concerns that attend any attempt to remove a case

from state court. *Breakman v. AOL LLC*, 545 F.Supp.2d 96, 100-101 (D.D.C. 2008) ("Because

of the significant federalism concerns involved, this court strictly construes the scope of its

removal jurisdiction."). As aptly noted by the U. S. District Court for the Eastern District of

Wisconsin:

> Such reasoning does not exalt form over substance. The question at issue involves the
> Court's subject matter jurisdiction. As with all such questions, we begin with the
> principle, rooted in exceedingly good policy, that federal courts are courts of limited
> jurisdiction. This principle gains additional merit in the removal context, because
> removal constitutes a serious infringement upon state sovereignty. Thus, the view that
> technical flaws in a removal petition "can be swept away like so much dust seriously
> misunderstands the conditions under which the formidable power of the federal judiciary
> can – and should – be invoked."

*Production Stamping Corp. v. Maryland Casualty Co.*, 829 F.Supp. 1074, 1077-1078 (E.D.Wis.

1993) (quoting *Fellhauer v. Geneva*, 673 F.Supp. 1445, 1449 (N.D. Ill. 1987)).

None of the "consent" letters were directed to the court, nor were they filed

independently such that counsel for the allegedly consenting defendants would be subject to Rule

11. There is no allegation in the Notice of Removal (or in the letters directed to counsel for

6

Krafft-Murphy) that any of the allegedly consenting defendants had authorized counsel for

Krafft-Murphy to enter an appearance on their behalf – or even a limited appearance – in

connection with the removal. Not one of the "consent" letters even alludes to the notion that the

purportedly "consenting" defendant reviewed the Notice of Removal in advance of its filing to

ascertain whether, after reasonable inquiry, the Notice was filed for any improper purpose, its

legal contentions were warranted by existing law, or its factual contentions had evidentiary

support, consistent with Rule 11.

It is axiomatic that every paper submitted to this court must be presented consistent with

Rule 11. Yet 28 U.S.C. § 1446(a) makes additional, express reference to the fact that a notice of

removal must be "signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." This

seemingly redundant reference in the statute has been interpreted to mean that each defendant,

individually, must in some fashion bind itself to the jurisdiction of this Court. As the Fifth

Circuit found in *Getty Oil v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir. 1988):

> ... while it may be true that consent to removal is all that is required under section 1446, a defendant must do so itself. This does not mean that each defendant must sign the original petition for removal, but there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action. Otherwise, there would be nothing on the record to "bind" the allegedly consenting defendant.

*Id.* at 1262 n.11; *see also Smith v. Union Nat. Life Ins. Co.*, 187 F.Supp.2d 635, 642 (S.D. Miss.

2001) (observing that the view expressed by the 5th Circuit in *Getty Oil* represents the majority

view).[3]

---

[3] *See, e.g., Burr v. Toyota Motor Credit Co.*, 478 F.Supp.2d 432, 437 (S.D.N.Y. 2006); *Spillers v. Tillman*, 959 F.Supp. 364, 369-370 (S.D. Miss. 1997); *Henderson v. Holmes*, 920 F.Supp. 1184, 1186-1187 (D.Kan. 1996) (collecting authority); *Nathe v. Pothenberg*, 931 F.Supp. 822, 824-825 (M.D. Fl. 1995); *Anne Arundel County, Md. v. United Pacific Insurance Co.*, 905 F.Supp. 277, 278-279 (D. Md. 1995); *Jarvis v. FHP of Utah, Inc.*, 874 F.Supp. 1253, 1254 (D. Ut. 1995); *Ogletree v. Barnes*, 851 F.Supp. 184 (E.D. Pa. 1994); *Knickerbocker v. Chrysler Corp.*, 728 F.Supp 460, 461-462 (E.D. Mich. 1990).

The U.S. District Court for the Eastern District of Missouri, when confronted with an analogous circumstance, framed the essential question as follows: "whether the [allegedly consenting] defendant was required to speak *directly to the court* for the removal to be effective." *Amteco, Inc. v. BWAY Corp.*, 241 F.Supp.2d 1028, 1030-1031 (E.D. Mo. 2003). The court held:

> I conclude that the law is that stated by numerous courts in other contexts: consent to removal must be unambiguous, and it must be communicated directly to the court – whether in writing or orally – and not simply to one's co-defendant.

*Id.* at 1032; *see also Landman v. Borough of Bristol*, 896 F.Supp. 406, 409 (E.D. Pa. 1995) ("In sum, for removal to be allowed under 28 U.S.C. § 1446, each defendant must file its own timely removal petition or file its own timely statement consenting to removal by a co-defendant.").

Requiring a defendant to file its own independent consent "is not an onerous requirement that unfairly disadvantages defendants or that can be manipulated by the plaintiff." *Henderson v. Holmes, supra*, 920 F.Supp at 1187 n.2. Instead, "[i]t is consistent with the notion that filing requirements are strictly construed and enforced in favor of remand." *Id.*

The failure of the "consenting" defendants to voice their independent consent directly to this Court within the designated time period renders the removal petition defective.

### b. The Notice of Removal Violates LCvR 5.1(e)

Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." LCvR 5.1(e)(1) requires further that "[a]ll papers signed by an attorney shall contain the . . . D.C. Bar identification number of the attorney if the attorney is a member of the D.C. Bar." None of the "consent" letters contain the signing attorney's D.C. bar number. But worse, upon information and belief, a number of the

letters cannot because the signatories are not members of the Bar of this Court.  LCvR 5.1(e)(2) states unequivocally:

> By signing a pleading or paper that is presented to the Court, an attorney is certifying that the attorney, and all other attorneys appearing with the attorney on the pleading or paper, are members of, or have a pending application for admission to, the Bar of this Court, or has complied with LCvR 83.2(c) or (d), or is covered by LCvR 83.2(e) as an attorney employed by the United States or one of its agencies.

Even if the letters to Krafft-Murphy's counsel attached to the removal petition could be deemed a "filing" with the Court sufficient to demonstrate consent, at least four of the letters submitted in this case would not have passed muster had they been submitted directly to the Court, rather than through Krafft-Murphy as intermediary.

Upon information and belief, none of the following signatories to the "consent" letters are members of the Bar of this Court or otherwise satisfy LCvR 5.1(e)(2): Brendan H. Chandonnet at Morgan Lewis on behalf of Defendant Owens-Illinois, Inc., Vincent J. Palmiotto at Miles & Stockbridge, P.C. on behalf of Defendant CertainTeed Corp., Scott Richmond at Venable, LLP on behalf of Defendant Rapid-American Corp., or Xan K. DeMarinis at Steptoe & Johnson, LLP on behalf of Defendant Metropolitan Life Insurance Co..

What purpose would Local Rule 5.1 serve if it could be obviated by merely having someone represent to the Court that which the signatory of the "consent" letter could not accomplish himself?  An attorney not authorized to practice before the court cannot informally piggy-back on the pleadings of counsel who is licensed.  Attaching an invalid consent to a removal petition signed by a licensed attorney does not convert the deficient consent into a valid one.

And, as this Court has noted in the removal context, the fact that Defendant CertainTeed, subsequent to removal, filed an Answer in this Court does not cure its previous defective

9

"consent." *Williams v. Howard University*, *supra*, 984 F.Supp. at 30 n.4 ("filing answer is ambiguous act insufficient to be consent to removal") (citing *Landman*, *Jarvis*, and *Production Stamping*, all *supra*).

The failure to comply with this Court's Rule 5.1 warrants remand.

### c. The Fact that Two Allegedly Consenting Defendants Continued to File Papers in the Superior Court, after Removal, Demonstrates Their Ambivalence Toward Removal and is Record Evidence of Ambiguity

This case was removed to this Court on June 5, 2008, with the alleged consent of all defendants. Yet, on June 10, 2008, Defendant A.W. Chesterton filed its Answer to Plaintiffs' Complaint in the Superior Court for the District of Columbia. *See*, e-filed Answer of A.W. Chesterton, a copy of which is attached hereto as Exhibit 1. Additionally, on June 17, 2008, Defendant Metropolitan Life Insurance Co. filed a notice of substitution of counsel in this case in the Superior Court. *See*, e-filed Praecipe, a copy of which is attached hereto as Exhibit 2.

As discussed above, "each defendant's consent to removal must be unambiguous and independent." *Williams*, 984 F.Supp at 29. Absent such a showing, and when faced with a motion to remand, the Court must remand. *Id.* at 30. The act of affixing one's signature to a form "consent" letter not directly filed with the Court on behalf of one's client (and in the case of MetLife signed by an attorney not licensed in this Court), coupled with the continued filing of papers, post-removal, in the Superior Court, does not evince unambiguous consent. Rather, it represents ambiguity mandating remand of this action.

### 3. **The Notice of Removal Does Not Establish Federal Question Jurisdiction**

#### a. **The Notice Runs Afoul of the Well-Pleaded Complaint Rule**

In analyzing the focal point of this Court's analysis in ascertaining whether it has proper

removal jurisdiction when the alleged basis for removal is federal question jurisdiction, as here,

Judge Sullivan recently reiterated:

> To determine whether a case raises a federal question for purposes of removal jurisdiction, this Court applies the "well-pleaded complaint" rule, which holds that a cause of action arises under federal law **only when the federal claim can be found on the face of the complaint and only the face of the complaint** . . . The Court must examine the 'well-pleaded' allegations of the complaint and ignore potential defenses to determine whether a claim arises under federal law . . . The plaintiff is the master of the claim and may rely exclusively on state law to avoid federal question jurisdiction.

*U.S. Airways Master Executive Council v. America West Master Executive Council*, 525

F.Supp.2d 127, 132-133 (D.D.C. 2007) (emphasis added) (citations omitted).

Krafft-Murphy does not allege that the basis of this Court's removal jurisdiction can be

ascertained from within the four corners of Plaintiffs' complaint. Thus, Krafft-Murphy's petition

runs afoul of the well-pleaded complaint rule. *See Blair v. Siemsen*, 2008 WL 2414559 (W.D.

Tex. June 12, 2008) (remanding case where plaintiff stated "no facts supporting federal enclave

jurisdiction on the face of his complaint."). Moreover, Plaintiffs have not "artfully pled" their

case so as to coyly avoid a federal question in order to keep their case in Superior Court. *See*

*U.S. Airways*, 525 F.Supp.2d at 133. Rather, Plaintiffs' complaint in this case is virtually

identical to the dozens of similar complaints filed in Superior Court over the last decade by

undersigned counsel's firm on behalf of asbestos claimants. The Complaint asserts D.C.

common-law product liability claims premised in negligence, strict liability and breach of

implied warranty.[4]

---

[4] The Complaint's other counts include loss of consortium, punitive damages, and aiding and abetting . Each of these claims is derivate of the underlying product liability claims.

11

Krafft-Murphy does not ask this Court to look at the Complaint as the source of its jurisdiction, but rather to a document outside the pleadings, called "Armando Sammartino – Work History" which was sent *via* email from undersigned to defense counsel prior to Mr. Sammartino's deposition. The "work history" – at best an ambiguous statement – cannot satisfy the "well-pleaded complaint" rule or this Court's stringent requirements for removal jurisdiction.

While there is a corollary to the well-pleaded complaint rule in circumstances where "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," this is not such a case. *See Int'l Union of Bricklayers and Allied Craftworkers v. Insurance Co. of the West*, 366 F.Supp.2d 33, 37 (D.D.C. 2005) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In discussing this complete pre-emption corollary (or artful pleading doctrine) to the well-pleaded complaint rule, Judge Sullivan recognized that to date, the U.S. Supreme Court has only acknowledged three statutes that carry the extraordinary preemptive force to support complete preemption of a claim pleaded in terms of state law: § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185; § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a); and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86. *U.S. Airways*, 525 F.Supp.2d at 133-134.

It goes without saying that none of these three statutes has any bearing on this case. Accordingly, this Court lacks jurisdiction and must remand the case to the Superior Court. *Id.* at 135.

**b. The Document Titled "Armando Sammartino – Work History" Does Not Support Removal**

Even if this Court opted to extend the confines of the "well-pleaded complaint" rule, the document which Krafft-Murphy serves up as the basis for removal jurisdiction comes up

wanting. As is the practice in Superior Court asbestos litigation, undersigned counsel furnished defense counsel with a copy of Plaintiff's work history in advance of Mr. Sammartino's deposition. *See* Exhibit 2 to Notice of Removal. The "work history" serves as a roadmap of Plaintiff's historical employment, identifying various employers and jobs at which Plaintiff worked during his career. It is nowhere suggested on the face of the Work History document or in counsel's email, also attached to the Notice of Removal, that the document was intended to "list[] job sites at issue where exposure to asbestos-containing materials is alleged," Notice at p. 4; rather, the document simply provided a chronological history of Mr. Sammartino's career, for use at his deposition. At some of these jobs, Plaintiff expressly alleges exposure to asbestos – *at others, he does not*. At certain of the jobsites, Plaintiff's counsel may be aware, from representation of clients in other cases or through pre-filing investigation, that asbestos was utilized at a particular jobsite during the same time period that Plaintiff worked at that job. Ultimately, it remains Plaintiff's burden to prove up exposure to those products. This is typically accomplished through deposition testimony where either Plaintiff (or one of Plaintiff's coworkers) identifies asbestos products to which Plaintiff was exposed. Asbestos-injured plaintiffs must also rely on expert testimony to explain the medical causation component of the case – linking exposure to asbestos dust to development of the disease.

In most cases, the work history document is furnished as part of Plaintiff's signed and sworn responses to Defendants' interrogatory requests. In this case, due to Mr. Sammartino's exigent health status, undersigned counsel furnished a copy of the work history by email, *unsigned and unsworn*, in an effort to make sure that defense counsel suffered no prejudice at the video deposition of Mr. Sammartino. *See* Exhibit 2 to Notice of Removal. Defense counsel had ample opportunity at deposition to flesh out the nature of Mr. Sammartino's asbestos exposure,

13

including his recollection of any exposures at the various locations identified in the "work history" document.

Here, the Work History of Armando Sammartino alleged that Sammartino worked at a number of jobsites where asbestos was known (either by Plaintiff or his counsel) to have been used during the relevant time period: the German Embassy, Children's Hospital, Columbia Women's Hospital, the Mayflower Hotel, National Airport and the White House. Of these locations, Krafft-Murphy alleges in its Notice of Removal that National Airport and the White House are federal enclaves justifying removal to this Court. Krafft-Murphy also alleges that Plaintiff was exposed to asbestos at other federal enclaves, however, *the work history on its face does not allege the presence of asbestos at any locations other than those identified above.*[5] Thus, the only two locations that are even arguably of any import in this court's analysis are National Airport and the White House, the only two alleged federal enclaves where a suggestion of asbestos exposure exists.

The unsworn "work history" document does not, on its face, in any way compel the conclusion that Mr. Sammartino's case "arose" on a federal enclave. When and where a plaintiff's injury "arose" is a very complicated issue in an asbestos personal injury case where a plaintiff's exposures to asbestos can span decades and where the disease may take 30 to 40 years to manifest. *See, e.g.,* A. Churg & F. Green, Pathology of Occupational Lung Disease 350 (2d ed. 1998) ("The latency period for asbestos-induced mesothelioma is long, with a mean value of 30 to 40 years"). Plaintiffs in asbestos litigation generally argue that each and every exposure to asbestos substantially contributes to the development of disease. Defendants in asbestos

---

[5] Krafft-Murphy claims that Plaintiff's case arose at other federal enclaves including: the Old Soldiers Home, the Smithsonian Institution, the U.S. Capitol Power Plant, the V.A. Hospital, and Walter Reed Army Medical Center. The work history document upon which Krafft-Murphy relies as the basis for removal says nothing about Plaintiff's exposure, or lack thereof, to asbestos at these locations. The *ipse dixit* of counsel will not support removal.

litigation generally vehemently contest this argument. Here, in order to satisfy its burden to support removal jurisdiction, Krafft-Murphy would have to, at a minimum, have supplied the Court with some form of medical evidence that the alleged exposures to asbestos at National Airport and the White House caused or contributed to Mr. Sammartino's mesothelioma. Without any medical evidence that such is the case, there is nothing in the record before the Court that suggests that Mr. Sammartino's case "arose" at either of those two locations.

Given the burden on the removing party to show that jurisdiction exists in this Court, and given the fact that any ambiguities must be resolved in favor of remand, this case must be returned to the Superior Court. *See Ctr. For Science in the Public Interest*, 534 F.Supp.2d at 143.

### c. Armando Sammartino's Sworn Deposition Testimony Undermines Removal

Mr. Sammartino's deposition, conducted prior to the filing of the Notice of Removal, made it clear that Mr. Sammartino does not allege exposure to asbestos at either National Airport or the White House, a fact which Krafft-Murphy neglects to share with the Court.

When questioned at his deposition about his work at National Airport and the White House, Mr. Sammartino testified as follows:

Q    Okay. Sir, do you recall working at the National Airport?

A    Yeah, I remember working at the National.

Q    Okay. Do you know who your employer was at the National Airport?

A    Thornton.

* * *

Q    It was part of new work? Okay. Do you recall what type of equipment you were installing?

15

A     Heat pumps.

Q     Do you recall in what area of the airport you were working?

A     I can't pinpoint it. The heat pumps were installed out on the roof.

\* \* \*

Q     Okay. Sir, do you know if you -- do you have any way of knowing whether you personally handled any asbestos-containing products while installing the heat pumps?

A     No.

Q     No, you have -- no, you don't know?

A     I don't know.

\* \* \*

Q     Okay. Sir, do you recall working at the White House?

A     At the grounds. On the grounds, yes.

Q     You worked on the grounds at the White House? Do you recall what work you performed on the grounds at the White House?

A     It involved what we referred to [as] installation of the cooling tower. We had to go on the grounds of the White House to dig up unexcavated pipe.

\* \* \*

Q     Okay. At this site in particular, sir, other than the grounds, other than the piping that you unearthed and then dug up and then reinstalled, do you recall any other piping at this site other than the piping in the ground?

A     No, I don't recall.

Q     Okay. Do you have any way of knowing whether you personally used any asbestos-containing products?

16

A        I did not use any asbestos on this project.

* * *

Q        Okay. Do you have any recollection of, other than piping, did your work at the

White House involve the use of any other products?

A        No.

Deposition of Armando Sammartino, May 30, 2008, pp. 106-109, 117-122. A copy of the

relevant deposition excerpts is attached hereto as Exhibit 3.

Accordingly, if the Court is inclined to view evidence beyond that contained in Plaintiffs'

well-pleaded complaint, the more fully developed record shows that there is no merit to Krafft-

Murphy's petition that Plaintiff's injury arose at a federal enclave.

### d. The Notice of Removal Fails to Establish that Any of the Named Jobsites Are "Federal Enclaves"

The Notice of Removal fails to establish that the named jobsites are in fact federal

enclaves, and therefore Krafft-Murphy has failed to carry its burden of demonstrating federal

enclave jurisdiction for the purpose of removal. *See Breakman v. AOL LLC*, 545 F.Supp.2d at

100 ("The party seeking removal of an action bears the burden of proving that jurisdiction exists

in federal court."). The Notice of Removal cobbles together a hodgepodge of information

obtained from various websites.[6] At most, this information establishes that the United States

government is the property owner of several of the jobsites alleged to be federal enclaves. With

respect to other jobsites, the Notice of Removal merely describes government-related operations

or matters of historical significance that have taken place upon the sites. Neither type of

information is legally sufficient to establish federal enclave status. Removing Defendants do not

---

[6] Plaintiffs believe that the citation to unauthenticated websites is improper and requests that the Court reject the Notice of Removal on this basis as well. Even assuming their authenticity, however, the facts obtained from these websites are in any case insufficient to carry the Removing Defendants' burden of demonstrating federal enclave jurisdiction.

17

even attempt to perform the legal inquiry required in order to establish federal enclave status.
*See Celli v. Shoell*, 40 F.3d 324, 328 (10th Cir. 1994).

Federal enclave status is determined by more than mere property ownership. As

observed by the Tenth Circuit in *Celli*:

> Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question, resting on such factors as whether the federal government exercises exclusive, concurrent or proprietarial jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether that law is consistent with federal policy, and whether it has been altered by national legislation.

*Id.* (remanding case to District Court to perform fact intensive inquiry).

The Notice of Removal wholly dispenses with the type of legal analysis required by *Celli*

and instead merely suggests, based on information gleaned from unauthenticated websites, that

the federal government may be the property owner of the lands or buildings at several of the

jobsites in question. Krafft-Murphy makes no attempt to identify and to examine any deed,

testament, or other legal document establishing and evincing the nature and conditions of the

federal government's ownership of these sites, in order to determine whether the federal

government exercises exclusive or merely proprietary jurisdiction over the lands. *See, e.g., Pratt*

*v. Kelly*, 585 F.2d 692, 696-697 (4th Cir. 1978). With regard to the jobsites alleged to be federal

enclaves, the Notice of Removal merely alleges that the federal government owns and/or

operates certain of the sites, or simply recites information gleaned from the various websites

about the government-related functions or matters of historical significance that take or have

taken place upon the sites. Notice at 4-5; 7-8. While surely of interest to the tourist or the

interested citizen, the sundry facts quoted from the websites do not aid Krafft-Murphy in

satisfying the sort of analysis articulated in *Celli* and *Pratt*.

18

    **e.  Because the Notice of Removal fails to Establish that the Named Jobsites are Federal Enclaves, 16 U.S.C. §457 – Which Creates a Cause of Action for Personal Injuries Suffered on a Federal Enclave – Is Not Applicable.**

The Notice of Removal erroneously suggests that 16 U.S.C. §457 creates an independent basis for federal question jurisdiction.  On the contrary, Section 457 is simply an enabling statute that creates a federal cause of action for personal injuries suffered on a federal enclave.  Because the Removing Defendants have failed to establish that the named jobsites are in fact federal enclaves, they have failed to show that 16 U.S.C. §457 is applicable.

Section 457 creates a federal cause of action for personal injuries suffered "within a national park or other place subject to the exclusive jurisdiction of the United States," by establishing that "in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." 16 U.S.C.A. §457 (West 2008).  Thus, Section 457 does nothing more than provide the necessary causes of action for personal injuries sustained in "places over which the United States has exclusive jurisdiction," that is, *federal enclaves.* Indeed, this Court has characterized 16 U.S.C. § 457 as "adopting state law of wrongful death for lawsuits concerning acts committed on national parks and other *federal enclaves.*" *Venable v. National Car Rental System, Inc.*, Civ. A. No. 96-2564-LFO, 1997 WL 198113 at *1 (D.D.C. April 15, 1997).  Because the Removing Defendants have failed to establish that the named jobsites are in fact federal enclaves, they have failed to show that 16 U.S.C. §457 is applicable.

    **f.  The Notice of Removal Fails to Show that Mr. Sammartino's Right to Relief Necessarily Depends on Federal Law and that the Question of Federal Law is Substantial**

Even if the Notice of Removal had established that the named jobsites are in fact federal enclaves, which it does not, this Court should decline to exercise federal enclave jurisdiction

19

because Mr. Sammartino's alleged exposure to asbestos products occurred both on *and off* federal enclaves, and thus his right to relief does not "necessarily depend" on a question of federal law.   Where a complaint alleges a state law cause of action (in this case D.C. product liability claims) "federal courts have developed a two-part analysis for determining whether a state law cause of action can serve as a basis for federal removal jurisdiction: the removing party must show '(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial.'" *Green v. Wachovia Bank N.A.*, 2007 WL 1302598 (D.D.C. May 2, 2007) (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc).

In examining whether a plaintiff's right to relief "necessarily depends" on a federal question, this Court has held that "[i]f a claim is supported not only by a theory establishing federal jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist."  *Green v. Wachovia Bank, supra*, citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 149 (4th Cir.1994).  In *Mulcahey*, the plaintiffs alleged that the defendant chemical company negligently released hazardous substances into the soil. 29 F.3d at 149. Plaintiffs relied on alternative theories of liability: (1) that Defendant was negligent *per se* because it had violated several federal environmental statutes, and (2) that Defendant was negligent *per se* because it had violated various state and local environmental laws. *Id.* at 153. The Court concluded that because only one of the plaintiffs' theories involved federal law, "the federal issue raised thereby is not substantial," and therefore "because the Plaintiffs' alternative theory of negligence *per se* is not 'essential' to their negligence theory, no federal subject matter jurisdiction exists." *Id.* at 154.

Likewise here, the possibility that Mr. Sammartino was exposed to Defendants' asbestos products on one or more federal enclaves is not "essential" to his claim. The Work History provided by Mr. Sammartino's counsel to Defendants lists twenty-eight (28) periods of employment and/or individual jobsites where Mr. Sammartino may have been exposed to Removing Defendants' asbestos products. The Notice of Removal alleges (although it fails to show) that seven (7) of these jobsites, a mere 25 percent, are federal enclaves. Thus, the possibility that Mr. Sammartino's exposure took place on one or more federal enclaves is a mere alternative to the theory that Mr. Sammartino was exposed to the Defendants' asbestos products at locations that do not give rise to any federal question. A number of scenarios are possible under which the application of federal law would be unnecessary. The jury could find that Mr. Sammartino was not exposed to asbestos on the alleged federal enclaves or, on the other hand, that he was exposed to the Defendants' asbestos products both on and off the alleged enclaves, allowing liability to be found solely upon State law claims.

Courts have affirmed that a Removing Defendant must raise a substantial federal question in order to invoke federal enclave jurisdiction in the context of asbestos products liability. In *Anderson v. Crown Cork & Seal*, the United States District Court for the Eastern District of Virginia considered whether remand was required if a portion of the plaintiff's exposure occurred outside any federal enclave. 93 F.Supp. 2d 697, 701 (2000). The Court referenced the decision in *Akin v. Big Three Industries, Inc.*, 851 F. Supp. 819 (E.D. Tex 1994) and quoted with approval the *Akin* Court's assertion that "had some of the exposure occurred off-base, the defendant's burden of establishing enclave jurisdiction would have been heavier," on the rationale that "[w]hen exposures allegedly occur partially inside and partially outside the boundaries of an enclave ... the state's interest increases proportionally, while the federal interest

decreases." *Anderson*, 93 F. Supp. 2d at 702 (quoting *Akin*, 851 F.Supp. at 825, n.4).  The *Anderson* Court ultimately distinguished the facts before it from *Akin*, concluding that plaintiff Anderson's exposure had occurred aboard a non-federal enclave vessel that had "simply moved in and out of federal enclaves," as opposed to the *Akin* plaintiffs, who "actually worked in federal enclaves." *Anderson*, 93 F. Supp.2d at 702.

In fact, the *Akin* plaintiffs worked, and were exposed to toxic chemicals, *exclusively* on a federal enclave. *Akin*, 851 F. Supp. at 822 ("*All* plaintiffs performed *all* duties on Tinker Air Force Base[,] [a]nd the plaintiffs now claim that these very duties... resulted in personal injuries.")(*emphasis added*).  It is therefore inapt that Krafft-Murphy attempts to rely on *Akin*, which they incorrectly characterize as "a case similar to this matter."  On the contrary, Mr. Sammartino's case is precisely the type of case that the *Akin* Court distinguished – a case in which "some of the exposure occurred off-[federal enclaves]" and therefore, "the defendant's burden of establishing enclave jurisdiction would [be] heavier."  Krafft-Murphy has failed to carry the heavy burden of establishing federal jurisdiction under *Green v. Wachovia Bank* and *Akin*, because the allegation that 25 percent (at most) of Mr. Sammartino's asbestos exposure occurred upon federal enclaves does not raise a substantial federal question, but is merely an alternative theory of liability to those asbestos exposures that did not occur on federal enclaves and thus do not raise a federal question.

To the extent this Court considers any of these legal determinations "close calls," the Court should resolve the matter in favor of remand. *Anderson*, 93 F.Supp. 2d at 703.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court remand this case to the Superior Court for the District of Columbia.  In the alternative, Plaintiffs respectfully

request that the Court sever that part of the case in which only state law claims predominate and remand that component of the case to the Superior Court for the District of Columbia pursuant to 28 U.S.C. § 1441(c).

Respectfully submitted,

*/s/ Daniel A. Brown*
Daniel A. Brown
DC Bar No. 444772
BROWN & GOULD, LLP
7700 Old Georgetown Road, Suite 500
Bethesda, Maryland 20814
Tel: (301) 718-4548
Fax: (301) 718-8037
dbrown@brownandgould.com
Attorney for Plaintiffs

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2008, a true and correct copy of the foregoing Motion to Remand was served electronically via the Court's CM/ECF system (or, to the extent such service could not be accomplished because the recipients have not yet registered for e-service, via first class U.S. mail, postage prepaid) to all counsel of record.

*/s/ Daniel A. Brown*
Daniel A. Brown

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARMANDO A. SAMMARTINO and THERESE | : |
| SAMMARTINO, his wife | : |
| 1604 Dennis Avenue | : |
| Silver Spring, MD 20902 | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No. 08 0967 RJL |
| | : |
| | : |
| AC&R INSULATION CO., INC., et al., | : |
| | : |
| Defendants. | : |
| ——————————————————— | : |

## <u>ORDER</u>

**UPON CONSIDERATION OF** Plaintiffs' Motion to Remand and any

opposition thereto, it is this ___ day of _____ 2008

     **ORDERED** that the motion is **GRANTED**; and it is further

     **ORDERED** that the case be and hereby is remanded to the Superior Court for the

District of Columbia forthwith.


_____
Hon. Judge Richard J. Leon
U.S. District Court for the District of Columbia


Copies to:

All counsel of record

D.C. Superior Court
08 Jun 10 A11:01
Clerk of Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

ARMANDO A. SAMMARTINO, et ux    *    Civil Action No. 2008 CA003352 A

      Plaintiffs    *

v.    *

AC&R INSULATION CO., INC., et al    *

      Defendants    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## A.W. CHESTERTON COMPANY'S
## ANSWER TO COMPLAINT

A.W. Chesterton Company ("Chesterton"), a Defendant herein, by counsel, answers the Plaintiff's Complaint, and says:

1.    Paragraph 1 of the Complaint contains allegations of law and, for this reason, a response is not required.

2.    Defendant denies that Plaintiff was injured by exposure to Defendant's products. Defendant is without sufficient knowledge to either admit or deny the remaining allegations contained in Paragraph 2 of the Complaint.

3.    Defendant denies the allegations contained in Paragraph 3 of Count I of the Complaint.

4.    As to the allegations contained in Paragraph 4 of Count I of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations relating to the Plaintiff's injuries. The Defendant denies any suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

5.    As to the allegations contained in Paragraph 5 of Count I of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations


EXHIBIT 1

relating to the Plaintiff's wages. The Defendant denies any suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

6.    Defendant denies the allegations contained in Paragraph 6 of Count II of the Complaint.

7.    As to the allegations contained in Paragraph numered 7 of Count II of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations relating to the Plaintiff's injuries. The Defendant denies any suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

8.    As to the allegations contained in Paragraph numered 8 of Count II of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations relating to the Plaintiff's wages. The Defendant denies any suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

9.    Defendant denies the allegations contained in Paragraph numbered 9 of Count III of the Complaint.

10.    Defendant denies the allegations contained in Paragraph numbererd 10 of Count III of the Complaint.

11.    Defendant denies the allegations contained in Paragraph numbered 11 of Count III of the Complaint.

12.    As to the allegations contained in Paragraph numbered 12 of Count III of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations relating to the Plaintiff's injuries. The Defendant denies any

2

suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

13.     As to the allegations contained in Paragraph numbered 13 of Count III of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations relating to the Plaintiff's wages.  The Defendant denies any suggestion that it was negligent or that its conduct in any way caused or contributed to the Plaintiff's injuries.

14.     Defendant denies the allegations contained in Paragraph numbered 14 of Count IV of the Complaint.

15.     Defendant denies the allegations contained in Paragraph numbered 15 of Count IV of the Complaint.

16.     Paragraph numbered 16 does not allege any independent facts, but incorporates prior paragraphs of the Complaint.  Defendant answers this paragraph by incorporating prior paragraphs of the Complaint.  Defendant answers this paragraph by incorporating its responses to the prior paragraphs as applicable.

17.     As to the allegations contained in Paragraph numbered 17 of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations.

18.     Defendant denies the allegations contained in Paragraph numbered 18 of Count V of the Complaint

19.     As to the allegations contained in Paragraph numbered 19 of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations.

3

20.     As to the allegations contained in Paragraph numbered 20 of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations.

21.     As to the allegations contained in Paragraph numbered 21 of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations.

22.     As to the allegations contained in Paragraph numbered 22 of the Complaint, the Defendant is without sufficient knowledge to either admit or deny those allegations.

23.     Defendant denies the allegations contained in Paragraph numbered 23 of Count VI of the Complaint.

24.     Defendant denies the allegations contained in Paragraph numbered 24 of Count VI of the Complaint.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against A. W. Chesterton Company.

## SECOND DEFENSE

The Court lacks personal jurisdiction over A. W. Chesterton Company.

## THIRD DEFENSE

The Court lacks subject matter jurisdiction as to the claims of Plaintiffs herein.

## FOURTH DEFENSE

There is insufficiency of service of process upon A. W. Chesterton Company.

## FIFTH DEFENSE

4

There is insufficiency of process upon A. W. Chesterton Company.

## SIXTH DEFENSE

Plaintiffs have failed to join a party or parties necessary for a just adjudication of this matter and have further omitted to state any reasons for such failure.

## SEVENTH DEFENSE

The Complaint was not filed within the time permitted by law, consequently, Plaintiffs' claims are now barred by the applicable statute of limitations.

## EIGHTH DEFENSE

The delay of Plaintiffs in commencing suit is inexcusable and has resulted in prejudice to A. W. Chesterton Company so substantial that the defense of laches bars Plaintiffs' claims.

## NINTH DEFENSE

Venue is improper for the causes of action alleged.

## TENTH DEFENSE

Plaintiffs are barred from recovery by the doctrine of contributory negligence.

## ELEVENTH DEFENSE

Punitive damages are violative of this Defendant's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution in that they (a) are penal in nature and are tantamount to the imposition of a criminal fine; (b) would constitute double jeopardy; (c) instructions and standards for the imposition of punitive damages are vague, indefinite and uncertain and set no limit on the damages which can be awarded, and do not apprise A. W. Chesterton Company of the conduct that would subject it to criminal penalties; (d) expose A. W. Chesterton Company to

multiple punishments and fines for the same act; (e) discriminate against A. W. Chesterton Company on the basis of wealth in that different amounts can be awarded against different Defendants for the same act but who differ only in material wealth; and (f) are not appropriately applied to A. W. Chesterton Company because it never engaged in an asbestos business or in conduct warranting the imposition of punitive damages.

## TWELFTH DEFENSE

The Plaintiffs' causes of action are barred by the applicable statutes of repose.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred by the doctrine of assumption of risk.

## FOURTEENTH DEFENSE

The Plaintiffs have released, settled, entered into an accord and satisfaction, or otherwise compromised their claims herein, and accordingly said claims are barred by operation of law; alternatively, Plaintiffs have accepted compensation as partial settlement of those claims for which this Defendant is entitled to a set-off.

## FIFTEENTH DEFENSE

While specifically and vigorously denying the allegations of the Plaintiffs concerning liability, injuries and damages, to the extent that Plaintiffs may be able to prove those allegations, this Defendant states that they were the result of intervening acts of superseding negligence on the part of a person or persons over whom this Defendant had neither control not the right of control.

## SIXTEENTH DEFENSE

Injured Plaintiffs were exposed to products which were manufactured at a time when the state-of-the-art was such that A. W. Chesterton Company and its alleged predecessors had no reason to know the potentially dangerous effect of prolonged exposure to asbestos and therefore had no duty to warn.

## SEVENTEENTH DEFENSE

The injuries and damages alleged were caused by an unforeseeable, superseding and/or intervening cause for which this Defendant is not liable.

## EIGHTEENTH DEFENSE

This Defendant denies any and all liability to the extent that Plaintiffs assert this Defendant's alleged liability as a successor, successor in business, successor in product line or a portion thereof, assignor, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, alter ego, subsidiary, whole or partially owned by, or the whole or partial owner of or member in an entity researching, studying, researching, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for, installation, repairing, marketing, warranting, rebranding, manufacturing for other, packaging and advertising a certain substance, the generic name of which is asbestos.

## NINETEENTH DEFENSE

At all times and places mentioned in the Complaint, the injured Plaintiff and those making claims through the injured Plaintiff have failed to make reasonable efforts to mitigate their injuries and damages, if any.

## TWENTIETH DEFENSE

There was no negligence, gross negligence, willful, wanton, or malicious misconduct, reckless indifference or reckless disregard of the rights of the Plaintiffs or malice (actual, legal, or otherwise) on the part of this Defendant as to the Plaintiffs herein.

## TWENTY-FIRST DEFENSE

Plaintiffs have waived any and all claims which they seek to assert in this action and are estopped both to assert and to recover upon such claims.

## TWENTY-SECOND DEFENSE

The injuries to, and damages of, the Plaintiffs, if any, were directly caused by the conduct of Johns-Manville Sales Corporation, its predecessors and successors in interest, its parent company or companies, its affiliates, subsidiaries or related companies and enterprises.

## TWENTY-THIRD DEFENSE

The products in question were not of themselves unsafe.

## TWENTY-FOURTH DEFENSE

If the products in question were unsafe, the damages to the Plaintiffs were not foreseeable at the time of the alleged exposure to said products.

## TWENTY-FIFTH DEFENSE

If the Products in question were unsafe, they were unavoidably unsafe.

## TWENTY-SIXTH DEFENSE

The Plaintiffs never, prior to the filing of this Complaint, informed this Defendant,

by notification or otherwise, of any breach of express and/or implied warranties; consequently, the claims of breach of express and/or implied warranties against this Defendant are barred.

### TWENTY-SEVENTH DEFENSE

At all relevant times, injured Plaintiffs were acting within the scope of their employment and damages sustained by injured Plaintiffs were proximately caused by the negligence of injured Plaintiffs' employers and co-employees. Plaintiffs' claims are, therefore, barred.

### TWENTY-EIGHTH DEFENSE

Injured Plaintiffs' employers and/or the persons or entities to whom the allegedly defective products were supplied were knowledgeable of the alleged defect, thus the claims are barred by the "sophisticated user" defense.

### TWENTY-NINTH DEFENSE

The recovery of Plaintiffs' alleged damages are limited by the applicable statutory ceilings on recoverable damages.

### THIRTIETH DEFENSE

With respect to claims of breach of warranty, A. W. Chesterton Company will rely upon the defenses of express and implied disclaimer.

### THIRTY-FIRST DEFENSE

This Defendant adopts such defenses as have or will be raised by any other Defendant in this case.

### THIRTY-SECOND DEFENSE

This Defendant did not supply to the injured Plaintiffs' employers the products alleged to have caused the damages, injuries and losses about which Complaint is made.

### THIRTY-THIRD DEFENSE

Defendant is entitled to equitable credit toward any judgment which might be rendered against it for any Workmen's Compensation payment or award which might have been made to the Plaintiffs with respect to the Plaintiffs' alleged asbestos-related injuries or other damages.

### THIRTY-FOURTH DEFENSE

Any asbestos containing product manufactured and sold by the alleged predecessor-in-interest of this Defendant which gives rise to the Plaintiffs' claims herein were designed and manufactured pursuant to and in accordance with the specifications mandated by the United States government or its agencies. The knowledge of the United States government and its agencies of any possible health hazards from use of such products was equal or superior to that of the alleged predecessor-in-interest of this Defendant, and by reason thereof, this Defendant is entitled to such immunity from liability as exists in favor of the United States government or its agencies.

### THIRTY-FIFTH DEFENSE

The injuries alleged by the Plaintiffs were not reasonably foreseeable.

### THIRTY-SIXTH DEFENSE

The products in question were not in the same condition at the time they were allegedly used by the Plaintiffs as they were at the time they passed out of the control of

10

the alleged predecessor-in-interest of this Defendant, assuming that the alleged predecessor-in-interest of this Defendant ever had control of the products as alleged, which is denied.

### THIRTY-SEVENTH DEFENSE

The sole remedy of Plaintiffs employed by the A. W. Chesterton Company is under the applicable Worker' Compensation statutes of the District of Columbia or its sister States.

### THIRTY-SEVENTH DEFENSE

The sole remedy of Plaintiffs employed by the A. W. Chesterton Company is under the applicable Worker' Compensation statutes of the District of Columbia or its sister States.

### THIRTY-EIGHTH DEFENSE

The causes of action asserted by Plaintiffs do not arise from any acts or omissions of this Defendant within the District of Columbia or from any injury occurring within the District of Columbia.

### THIRTY-NINTH DEFENSE

Pursuant to Rule 8(b), A. W. Chesterton Company generally denies the averments in the Complaints and Complaints including the averments of jurisdiction, on the basis, _inter alia_, that A. W. Chesterton Company currently lacks sufficient information to admit or deny the averments, and that certain averments are legal conclusions as to which no response is required.

### FORTIETH DEFENSE

If, as alleged, the Plaintiff has been injured as a result of exposure to asbestos

11

fibers such fibers were not of the kind used by A. W. Chesterton in its products.

WHEREFORE, Defendant, A. W. Chesterton Company, asks the Court to dismiss the Plaintiffs' Complaint and to award its costs, including reasonable attorneys' fees and such further and other relief as the Court deems appropriate.

Respectfully submitted,


/s/ Keith R. Truffer
Keith R. Truffer Bar No. 465103
Royston, Mueller, McLean & Reid, LLP
102 West Pennsylvania Ave., Suite 600
Towson, Maryland 21204-4575
(410) 823-1800
Attorneys for Defendant
A. W. Chesterton Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of June, 2008, a copy of the foregoing Answer was electronically filed and served on all counsel pursuant to Administrative Order No. 01-06.


/s/ Keith R. Truffer
Keith R. Truffer

G:\LITIGATIONS\KRT Asbestos\CHESTERTON\Trial Groups\D C\Sammartino\Answer.doc

12

D.C. Superior Court
08 Jun 17 A09:57
Clerk of Court

# Superior Court of the District of Columbia

## CIVIL DIVISION

### Praecipe

⊚ **CIVIL ACTION** JM-170    The | 17th | Day of | June, 2008 |

○ **LANDLORD AND TENANT** JM-255

○ **SMALL CLAIMS** JM-260

| Armando A. Sammartino |

*Plaintiff*

| 2008 CA 003352 A |

| AC & R Insulation Co., Inc., et al. |    Case Number

*Defendant*

The Clerk of said Court will | substitute appearance for defendant Metropolitan Life Insurance

Company. Metropolitan Life Insurance Company, a defendant in these proceedings, respectfully

requests that the official service list be revised to delete the appearance of Xan DiMarinis, D.C. Bar

No: 497929, and ensure that the following individual(s) appear on the official service list for defendant

Metropolitan Life Insurance as counsel for Metropolitan Life Insurance Company in these proceedings:

Richard Albert, D.C. Bar No: 503610.

| |
| |
| |
| |

Attorney for Defendant

| Richard Albert |

Address

| 1330 Connecticut Ave., NW |

| Washington , DC 20036 |

Phone No. | (301) 610-2423 |    Bar No. | 503610 |

Attorney for Plaintiff

| Daniel A. Brown |

Address

| 7700 Old Georgetown Road, Suite 500 |

| Bethesda, MD 20814 |

Phone No. | (301) 718-4548 |    Bar No. | 444772 |

Form CV-358 (Oct. 92)

Replaces all previous editions of CV-358 which may be used.


EXHIBIT 2

CERTIFICATE OF SERVICE

I certify that all parties in this case have been served with an electronic copy of this

Praecipe.

Dated this 17th day of June, 2008.

/s/ Xan Kaitlin DeMarinis
Xan Kaitlin DeMarinis
D.C. Bar No: 497929
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

VOLUME III

IN THE SUPERIOR COURT

OF THE DISTRICT OF COLUMBIA

---------------------------X

ARMANDO A. SAMMARTINO and      :

THERESE SAMMARTINO             :

       Plaintiffs      :      CIVIL ACTION NO.

v.                             :      2008-CA-003352-A

AC&R INSULATION CO., INC.,     :

et al.                         :

       Defendants       :

---------------------------X

VIDEOTAPE DEPOSITION OF ARMANDO SAMMARTINO

The Videotape Deposition of ARMANDO SAMMARTINO was taken in the above-captioned case on Friday, May 30, 2008, commencing at 9:40 a.m. at 1604 Dennis Avenue, Silver Spring, Maryland, 20902, reported by Linda Bahur, RPR.

EVANS REPORTING SERVICES
The Munsey Building, Suite 705
Seven North Calvert Street
Baltimore, Maryland  21202
410-727-7100    800-256-8410

EXHIBIT 3

Armando Sammartino, Vol. III 5/30/08

Page 106

1   A   Yes. It must have been a general
2 contractor but I don't know who he was or anything
3 about him.
4   Q   Okay. Sir, do you recall working at the
5 National Airport?
6   A   Yeah, I remember working at the National.
7   Q   Okay. Do you know who your employer was
8 at the National Airport?
9   A   Thornton.
10   Q   Do you recall when you worked, around
11 what year you worked, started working at the
12 National Airport?
13   A   No, I don't remember what year.
14   Q   Do you recall how long you stayed at,
15 working at the National Airport?
16   A   I can't remember that either.
17   Q   Okay. Do you recall what decade you
18 would have worked at the National Airport?
19   A   Can't recall.
20   Q   Do you recall whether this was new
21 construction of a portion of the airport?

Page 107

1   A   Installation of equipment.
2   Q   And was this part of --
3   A   New work.
4   Q   It was part of new work? Okay. Do you
5 recall what type of equipment you were installing?
6   A   Heat pumps.
7   Q   Do you recall in what area of the airport
8 you were working?
9   A   I can't pinpoint it. The heat pumps were
10 installed out on the roof.
11   Q   Do you recall who manufactured those heat
12 pumps?
13   A   No.
14   Q   Can you describe for me the process of
15 installing the heat pumps?
16   A   Had to lift them with a crane off of the
17 ground, place them in the proper position on the
18 roof ready to be piped.
19   Q   Once they were in place, did you then
20 perform the piping work from the pumps?
21   A   Yes.

Page 108

1   Q   Sir, do you recall if these pumps had to
2 be insulated?
3   A   Insulators probably came in later.
4   Q   Okay. So when you were installing the
5 pumps, they were not insulated?
6   A   No.
7   Q   Okay. What about the pipes that ran from
8 the pumps, did those have to be insulated?
9   A   That's the insulator's project.
10   Q   Do you recall if they were insulated?
11   A   They were not insulated, to my knowledge.
12   Q   Okay. Sir, do you recall how long you
13 worked at National Airport installing these heat
14 pumps?
15   A   I have no idea.
16   Q   Do you recall whether you performed any
17 other work at National Airport other than installing
18 these heat pumps?
19   A   No.
20   Q   Okay. Did you have co-workers that were
21 working with you at this job site?

Page 109

1   A   Yes.
2   Q   Do you recall how many?
3   A   No names. I can't recall any names.
4   Q   Do you recall how many men it took to
5 install these heat pumps, how many pipefitters?
6   A   I guess six or seven, including the men
7 on the ground.
8   Q   Do you know who supplied the heat pumps
9 that you installed?
10   A   Don't know who supplied them.
11   Q   Okay. Sir, do you know if you -- do you
12 have any way of knowing whether you personally
13 handled any asbestos-containing products while
14 installing the heat pumps?
15   A   No.
16   Q   No, you have -- no, you don't know?
17   A   I don't know.
18   Q   Okay. Sir, do you know who employed the
19 insulators that would have insulated the heat pumps?
20   MR. LUXTON: Objection.
21   A   Rephrase that question.

28  (Pages 106 to 109)

Armando Sammartino, Vol. III 5/30/08

Page 110

1    Q    Sure.  Do you know -- the insulators that
2  you spoke of who insulated the heat pump after you
3  were done installing it, do you know who --
4    A    No.
5    Q    -- employed the insulators?
6    A    No.
7    Q    Okay.  Do you know if they were employed
8  by the same company that employed you?
9    A    I have no idea.
10    Q    Okay.  Sir, when the heat pumps arrived
11  at the site, do you recall how large they were?
12    A    They were quite large, too large to be
13  manhandled.  That's why we had to have a crane to
14  lift them.
15    Q    Okay.  Do you recall if they came in any
16  type of packaging?
17    A    Protective package, protective
18  boarding.
19    Q    Okay.  Do you recall any writing on that
20  board, on that boarding?
21    A    Don't recall any of that.

Page 111

1    Q    Okay.  Do you recall any, if there were
2  any logos or anything?
3    A    No.
4    Q    Okay.  Do you recall, were the heat pumps
5  delivered to the site by trucks?
6    A    I guess they had to come in by truck.
7    Q    Do you recall whether you saw these heat
8  pumps being offloaded from those trucks?  Was that a
9  no, sir?  Did you not see the heat pumps being
10  offloaded from the trucks?
11    A    That's the ground work.  I was on the
12  roof.
13    MS. HAUSSLER:  Okay.  Okay, sir.  I think
14  that's all the questions I have for you about
15  National Airport.  Does anyone else have any
16  questions?
17    (No response)
18    BY MS. HAUSSLER:
19    Q    Okay.  Sir, do you recall working at
20  Prince George's County Hospital?
21    A    Yes.

Page 112

1    Q    Do you recall when you would have worked
2  at that hospital?
3    A    No.
4    Q    Do you recall whether this was new
5  construction or renovation of a building?
6    A    Repair work.
7    Q    And was this repair work as a result of a
8  renovation or troubleshooting?
9    A    I have no idea.
10    Q    Okay.  Do you recall what was being
11  repaired?
12    A    I know I personally had to repair a
13  three-inch water line.
14    Q    Do you recall what building this
15  three-inch water line was located?
16    A    I have no idea.
17    Q    Do you recall how long you were at the
18  site?  Did you perform any other repairs other than
19  to this three-inch water line?
20    A    No.  I can't remember.
21    Q    Okay.  Can you describe the repairs that

Page 113

1  you had to perform to the three-inch water line?
2    A    No, I can't.
3    Q    Do you recall if you had any co-workers
4  working at this site with you?
5    A    Co-workers?
6    Q    Yes, sir.
7    A    I can't recall.
8    Q    Okay.  Do you recall if this repair work
9  was in the main building or a separate building of
10  the hospital?
11    A    I don't know what building we were
12  working in.
13    Q    Okay.  Do you recall the size of the
14  building?
15    A    No.  I have no idea.
16    Q    Okay.  Do you recall if there were any
17  other trades working around you at this building?
18    A    I can't recall.
19    Q    Okay.  And sir, do you recall if you were
20  working for Thornton at this job site?  Does that
21  sound correct?

29  (Pages 110 to 113)

Court Reporting in
Baltimore/Washington                    Evans Reporting Service
                                        800-256-8410                    Over 20 years of
                                                                        award-winning service

Armando Sammartino, Vol. III 5/30/08

Page 114

1    A    Think so.

2    Q    Sir, when you were repairing the
3    three-inch water line, do you have any way of
4    knowing whether that work would have involved
5    handling asbestos-containing products?

6    A    The particular job I was doing did not
7    involve any asbestos.

8    Q    And other than this time that you were
9    working on the three-inch water line, did you ever
10    do any other work at P.G. County Hospital, or Prince
11    George's County Hospital?

12    A    I don't think so.

13    Q    Okay. Sir, do you recall when Thornton
14    would have purchased their plumbing supply products
15    for this particular job site?

16    A    Yes. He would, he would have purchased
17    them.

18    Q    Do you recall where he would have
19    purchased them from?

20    A    I have no idea.

21    Q    Okay. Sir, do you recall working at

Page 115

1    Walter Reed Army Medical Center?

2    A    Yes.

3    Q    Do you recall when you would have worked
4    there?

5    A    No.

6    Q    Do you recall if you were working for
7    Thornton at the time?

8    A    Yes.

9    Q    Do you recall whether this was new
10    construction of a building or renovation?

11    A    I don't even remember the job.

12    Q    Okay. So if I understand you correctly,
13    you recall working at Walter Reed but you don't
14    recall what the job entailed?

15    A    Right.

16    Q    Okay. Sir, in general, throughout your
17    time working for Thornton, can you give to me a list
18    of any of your co-workers during the time you worked
19    for Thornton?

20    A    No, I can't. Can't recall one.

21    Q    Other than Charlie Goth, who I believe

Page 116

1    worked with you at a site, at the Smithsonian while
2    you were working for Thornton?

3    A    No. He wasn't there. He was not there.

4    Q    He was not working with you at the
5    Smithsonian.

6    A    Right.

7    MR. BROWN: No. Objection. I think he
8    means he was not working with him at Prince George's
9    County.

10    MS. HAUSSLER: Oh, okay. Okay.

11    MS. TOSTANOSKI: Which I thought was
12    Walter Reed.

13    MR. BROWN: I'm sorry, Walter Reed. I
14    misspoke. Walter Reed.

15    BY MS. HAUSSLER:

16    Q    Sir, now not referring to any particular
17    job site in particular, do you recall working, any
18    of your co-workers other than Charlie Goth from the
19    time when you were working at Thornton?

20    A    No, I can't recall anything.

21    Q    Okay. Do you recall anyone who would

Page 117

1    have worked as your supervisor while you were
2    working for Thornton?

3    A    No. Can't recall anything.

4    Q    Okay. And sir, since you can't
5    specifically recall the Walter Reed, what your work
6    entailed at the Walter Reed job site, do you have
7    any way to know whether you were exposed to any
8    asbestos-containing products at the Walter Reed job
9    site?

10    A    I have no way of knowing.

11    Q    Okay. Sir, do you recall working at the
12    White House?

13    A    At the grounds. On the grounds, yes.

14    Q    You worked on the grounds at the White
15    House? Do you recall what work you performed on the
16    grounds at the White House?

17    A    It involved what we referred to
18    installation of the cooling tower. We had to go on
19    the grounds of the White House to dig up unexcavated
20    pipe.

21    Q    Okay. So you were digging up pipe from

30 (Pages 114 to 117)

Court Reporting in
Baltimore/Washington

Evans Reporting Service
800-256-8410

Over 20 years of
award-winning service

Page 118

1  the ground and replacing it?
2      A   I remember having dug it up but I don't
3  remember replacing it.
4      Q   Okay.  And I don't want to make the same
5  mistake as before.  This involved the installation
6  of the cooling tower at the White House?
7      A   Pertaining to, not at the White House.
8  On the grounds.
9      Q   Okay.  So you were not inside the White
10  House but you were on the grounds?
11      A   Right.
12      Q   Right.  Do you know, the piping that you
13  were digging up, what type of piping was this?
14      A   I believe it was steel piping.
15      Q   Was this piping covered with any
16  material?
17      A   Dirt.
18      Q   Okay.  Sir, do you recall any other work
19  being performed while you were at the White House
20  other than -- strike that.
21          Do you recall performing any other work

Page 119

1  other than digging up this piping?
2      A   Yes.  It all refers back to the same
3  thing.  We removed the pipe.  We had to reinstall it
4  and cover it with earth and it involves -- there's
5  is a long story that goes with this.
6          The White House used to get its water
7  from the Potomac for the cooling power.  We did away
8  with that subterranean ditch and used their new
9  source of water which I don't know.  So we
10  didn't use that piping anymore.
11      Q   Okay.  So you were redirecting the piping
12  to another source?
13      A   Yeah.
14      Q   Okay.  The piping that you were
15  installing, what type of piping was that?
16      A   It was steel pipe.
17      Q   Okay.  And sir, did any of your work
18  involve those cooling towers that you mentioned?
19      A   The piping to the cooling tower.
20      Q   Okay.  I apologize.  I thought you were
21  done with your answer.  So your job involved the

Page 120

1  piping and the ground?
2      A   It's in the ground and above ground.  All
3  of the, wherever pipe may be needed.
4      Q   Okay.  At this site in particular, sir,
5  other than the ground, other than the piping that
6  you unearthed and then dug up and then reinstalled,
7  do you recall any other piping at this site other
8  than the piping in the ground?
9      A   No, I don't recall.
10      Q   Okay.  Do you have any way of knowing
11  whether you personally used any asbestos-containing
12  products?
13      A   I did not use any asbestos on this
14  project.
15      Q   Okay.
16          THE VIDEOGRAPHER:  Can we stop and change
17  the tape, please?
18          MR. BROWN:  Okay.
19          THE VIDEOGRAPHER:  This ends tape number
20  three of the deposition of Mr. Sammartino.  The time
21  is 12:27.

Page 121

1          (Break taken.)
2          (Whereupon, Sammartino Exhibit No. 5 was
3  marked for identification.)
4          THE VIDEOGRAPHER:  This is tape number
5  four of the video deposition of Armando Sammartino.
6  The time is 12:32.
7          BY MS. HAUSSLER:
8      Q   Sir, almost done with the White House
9  site.  Do you recall working with a Lenore Bradford?
10      A   (Shaking head.)
11      Q   What about a James Wallace?
12      A   Don't recall.
13      Q   Okay.  Do you have any recollection of,
14  other than piping, did your work at the White House
15  involve the use of any other products?
16      A   No.
17      Q   Okay.  Sir, have you ever heard of a man
18  named John Kutsos?
19      A   John who?
20      Q   Kutsos, K-U-T-S-O-S?
21      A   No.

31 (Pages 118 to 121)

Court Reporting in
Baltimore/Washington

Evans Reporting Service
800-256-8410

Over 20 years of
award-winning service

Armando Sammartino, Vol. III 5/30/08

Page 122

1   Q    What about Arthur Anderson?
2   A    He may have worked down in the
3   architect's office, but I don't remember him.
4   Q    Okay.
5   A    Or ever having talked to him.
6   Q    Okay. What about an Elmer Gibson?
7   A    Don't know.
8   Q    Okay. Sir, do you recall how long you
9   worked at the White House for?
10  A    Can't recall.
11  Q    Okay. Do you recall the names of any of
12  your co-workers at the White House?
13       MR. BROWN: Objection.
14  A    No.
15  Q    Sir, did you ever work for Nash Love
16  Associates?
17  A    Yeah.
18  Q    Do you recall when you began working for
19  Nash Love?
20  A    No.
21  Q    Do you recall any of the job sites that

Page 123

1   you may have worked at which you were employed --
2   A    No.
3   Q    -- by Nash Love?
4   A    No.
5   Q    Just sir, let --
6   A    I don't recall any of the job sites.
7   Q    Sir, I know you're, I know you want to
8   get this done with, but just so that the written
9   record is clear, can you just wait until I'm done
10  with my question? And, and I know that I've cut you
11  off a couple of times. I'll try to do the same for
12  you and your answer. Okay?
13  A    Okay.
14  Q    And I'll try to speed it along as quickly
15  as I can. Okay?
16       EXAMINATION
17       BY MR. FLAX:
18  Q    Before we go onto that site, can you hear
19  me, Mr. Sammartino?
20  A    I can hear you.
21  Q    Back to the White House before we move

Page 124

1   on, back to the White House. You worked outside,
2   under the sky?
3   A    Right.
4   Q    And when you worked at the White House,
5   did any other trade work around you?
6   A    I think they were preparing to put in
7   that belt they needed, one of our ex-presidents
8   had.
9   Q    And who was doing that preparation?
10  A    What about the preparation?
11  Q    What trade? What other trade, if any,
12  were present?
13  A    Oh, oh, stone mason. Cutting of stone,
14  placing of stone. Getting ready to put up the
15  structure for the building.
16       MR. FLAX: Thank you.
17       MS. HAUSSLER: Anyone else with the White
18  House?
19       (No response)
20       EXAMINATION
21       BY MS. HAUSSLER:

Page 125

1   Q    Sir, do you recall any of your co-workers
2   that may have worked with you while you were working
3   for Nash Love?
4   A    Can't remember. There was one, one
5   fellow that would go out and prepare documents,
6   measurements, but I remember, can't remember his
7   name.
8   Q    Okay. And do you recall the names of any
9   of your supervisors that you may have had?
10  A    No, I can't recall.
11  Q    Okay. Sir, when you were working for
12  Nash Love Associates, do you recall ever working at
13  the Riggs National Bank on M Street?
14  A    Yes.
15  Q    Do you recall when you would have worked
16  there?
17  A    Can't recall.
18  Q    Do you recall whether this was new
19  construction or renovation?
20  A    Installation of an electric boiler.
21  Q    Do you recall how long you worked at this

32 (Pages 122 to 125)

Court Reporting in
Baltimore/Washington

Evans Reporting Service
800-256-8410

Over 20 years of
award-winning service

Page 162

1    STATE OF MARYLAND )    SS:
2    COUNTY OF HARFORD )
3         I, Linda Bahur, a Notary Public of the
4    State of Maryland, do hereby certify that the
5    above-captioned proceeding took place before me at
6    the time and place herein set out.
7         I further certify that the proceeding was
8    recorded stenographically by me and this transcript
9    is a true record of the proceedings.
10        I further certify that I am not of counsel
11   to any of the parties, nor an employee of counsel,
12   nor related to any of the parties, nor in any way
13   interested in the outcome of this action.
14        As witness my hand and notarial seal this
15   5th day of June, 2008.
16
17
18   _____
     Linda Bahur
19   My commission expires
20   8/22/2011
21

Page 163

1    ERRATA AND SIGNATURE SHEET
2         I, ARMANDO SAMMARTINO, have read the
3    aforegoing and verify the same to be
4    stenographically accurate with the exception of the
5    following changes (if any):
6    Page  Line   Reads      Should Read
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   ( ) I have no corrections.
20   _____
21   Signature of Deponent

42 (Pages 162 to 163)

Court Reporting in
Baltimore/Washington

Evans Reporting Service
800-256-8410

Over 20 years of
award-winning service